## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Roderick Grant, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:18-cv-171 |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Tech Mahindra (Americas), Inc., | ) | |
| | ) | |
| Defendant. | ) | |

In this putative class action, plaintiff Roderick Grant alleges his former employer, defendant Tech Mahindra (Americas), Inc. (TMA), engaged in a nationwide pattern or practice of discrimination based on race and national origin. TMA moves to compel arbitration, asserting Grant's employment agreement mandates arbitration of Grant's individual claims and the arbitration clause of the employment agreement excludes class claims. (Doc. 40).[1] Grant opposes the motion.

Additionally, Grant moves for leave to amend the complaint to add another named plaintiff. (Doc. 52). TMA argues the proposed amendment would be futile because (1) TMA is not subject to the personal jurisdiction of this court as to the proposed additional plaintiff, (2) claims of the proposed additional plaintiff are dissimilar to Grant's claims such that joinder is not appropriate, and (3) a decision in TMA's favor on the motion to compel arbitration would render the motion to amend moot. (Doc. 53).

---

[1] Earlier, TMA moved to dismiss some of Grant's claims under Federal Rule of Civil Procedure 12, (Doc. 19), but withdrew that motion the same day it filed the motion to compel arbitration, (Doc. 39).

## Summary of Recommendation

The arbitration clause of Grant's employment agreement mandates arbitration of his individual discrimination claims against TMA but excludes arbitration of class-wide discrimination claims. The case should be stayed while arbitration of the individual claims proceeds, and the class-wide claims should be dismissed. If the district judge follows that recommendation, Grant's motion to amend the complaint should be denied.

## Background

 TMA is headquartered in Plano, Texas, and provides computer consulting and programming services to clients in the United States. (Doc. 20, p. 9; Doc. 40-4, p. 2). In the United States, TMA has 32 offices in 20 states and approximately 5,100 employees. (Doc. 53-1, pp. 2-3; Doc. 1, p. 4). TMA is a subsidiary of Tech Mahindra, Ltd., which is headquartered in Pune, India.

Grant contends TMA used various employment practices to favor employees of South Asian and Indian origin over employees of other national origins. The complaint alleges 90% or more of TMA's employees in the United States are of South Asian or Indian origin, which is significantly disproportional to the percentage of persons of South Asian and Indian origin in the relevant labor market. (Doc. 1, p. 6).

Grant worked as a Senior Technical Associate (sometimes referenced as Systems Analyst) at TMA's Fargo, North Dakota location from August 2012 through June 2015. Grant alleges at the time his employment with TMA ended, only approximately three of one hundred employees at the Fargo location were not of South Asian or Indian origin. Id. at 7. TMA terminated Grant's employment with fifteen days notice and asserts the termination was based on "financial reasons." (Doc. 1, pp. 8-9; Doc. 53, p. 8).

2

Grant seeks to pursue a class action alleging (1) disparate treatment on the basis of race under 42 U.S.C. § 1981; (2) disparate treatment on the basis of race and national origin under Title VII, 42 U.S.C. § 2000e; and (3) disparate impact on the basis of race and national origin under Title VII. (Doc. 1, pp. 12-14).

TMA moves to compel arbitration of Grant's claims, on an individual basis, pursuant to a clause in his July 10, 2012 Employment Agreement (the Agreement):

> Any controversy or dispute relating to this Agreement or the obligations arising there under shall be resolved by arbitration by one arbitrator under the rules of the American Arbitration Association to be held in the City of New York, New York. However, a party may have recourse to the courts for equitable relief[.]

(Doc. 40-3, p. 8).

## Law and Discussion

The Federal Arbitration Act (FAA) governs motions to compel arbitration, though the FAA does not mandate arbitration of any claim. Rather, arbitration is wholly a matter of the parties' consent, and the FAA addresses enforcement of parties' agreements to arbitrate. Lamps Plus, Inc., v. Varela, 139 S. Ct. 1407, 1415 (2019).

Under the FAA, if a suit is filed in a federal court "[u]pon any issue referable to arbitration under an agreement in writing for such arbitration," the federal case is to be stayed "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Whether the parties have agreed to submit a particular dispute to arbitration is an issue for judicial determination, unless the parties clearly agree otherwise. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). The Eighth Circuit has stated arbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers

3

the dispute. <u>ING Fin. Partners v. Johansen</u>, 446 F.3d 777, 779 (8th Cir. 2006). In light of the liberal federal policy favoring arbitration agreements, a district court is to interpret a broad arbitration clause to "send a claim to arbitration . . . as long as the underlying factual allegations simply touch matters covered by the arbitration provision." <u>Unison Co. v. Juhl Energy Dev., Inc.</u>, 789 F.3d 816, 818 (8th Cir. 2015) (quoting <u>3M Co. v. Amtex Sec., Inc.</u>, 542 F.3d 1193, 1199 (8th Cir. 2008)).

In support of its motion, TMA argues (1) the broad arbitration clause of the Agreement covers Grant's discrimination claims and (2) the arbitration clause does not cover claims of the putative class. (Doc. 40-1). Grant contends TMA's motion should be denied because (1) the Agreement has expired; (2) some of his claims for relief are equitable in nature and so are exempt from arbitration; (3) his statutory employment discrimination claims do not relate to the Agreement or obligations arising thereunder and so are not within the scope of the arbitration clause; (4) because the arbitration clause incorporates rules of the American Arbitration Association (AAA) and those rules permit arbitration of class claims, the Agreement should be interpreted to permit arbitration of class claims; and (5) if the Agreement were interpreted to exclude class-wide arbitration, it would provide immunity from pattern or practice discrimination claims and would thus be an unenforceable waiver of federal anti-discrimination rights. (Doc. 47).

Both parties submitted materials outside the pleadings, leading to a question of the standard the court is to apply in deciding a motion to compel arbitration. When both parties submitted materials beyond the pleadings in support of and resistance to a motion to compel arbitration, the Eighth Circuit held the standards of Federal Rule of

Civil Procedure 56 apply, pursuant to Rule 12(d). <u>City of Benkelman, Neb. v. Baseline Eng'g Corp.</u>, 867 F.3d 875, 881 (8th Cir. 2017). Therefore, the question here is whether there are genuine issues of material fact and whether TMA is entitled to judgment as a matter of law compelling arbitration. <u>Morgan v. Sundance, Inc.</u>, No. 4:18-cv-316-JAJ-HCA, 2019 WL 5089205, at *3 (N.D. Iowa June 28, 2019).

## 1.    Expiration of the Agreement

The Agreement states its term commenced "from your date of joining, which shall be on or before **August 01, 2012** and is effective till **July 30, 2017**, unless terminated earlier by either party as mentioned herein." (Doc. 40-3, p. 2). As to earlier termination, the Agreement gave both parties the right to terminate without cause on fifteen days written notice and further described reasons TMA might terminate the Agreement for cause. <u>Id.</u> at 2-3.

Grant contends the Agreement expired either when his employment with TMA ended or on July 30, 2017, and since the Agreement has expired, no part of it—including the arbitration clause—is enforceable. In support of his position, Grant cites <u>Litton Financial Printing Division, a Division of Litton Business Systems, Inc., v. National Labor Relations Board</u>, which declined to apply a presumption of arbitrability to an expired collective-bargaining agreement because doing so "would make limitless the contractual obligation to arbitrate." 501 U.S. 190, 209 (1991). Grant also cites <u>Nissan North American, Inc., v. Jim M'Lady Oldsmobile, Inc.</u>, which involved an automobile dealership agreement that had expired prior to the plaintiff filing a demand for arbitration of the parties' dispute. 307 F.3d 601 (7th Cir. 2002). In reversing an order compelling arbitration, the appellate court stated, "[A] contract that by its own terms

expired in 1999 cannot possibly be the basis of the parties' current dealership arrangement, and thus the termination of the current relationship cannot, at least absent additional evidence, be said to relate in any way to the expired contract." Id. at 604.

Grant also cites language of Honeywell International, Inc., v. National Labor Relations Board, where the court stated, "Parties are free to draft a contract agreeing to resolve postexpiration disputes through arbitration; absent such agreement, however, arbitration is not available." 253 F.3d 125, 135 (D.C. Cir. 2001). That case also involved an expired collective bargaining agreement, where the court held employees who were terminated after the agreement's expiration could not pursue arbitration under the agreement.

TMA argues the cases on which Grant relies are distinguishable because those cases involved disputes arising only after contract expiration and Grant's claims allege discrimination during the term of the Agreement. TMA points to Koch v. Compucredit Corp., which cited Litton for a presumption in favor of postexpiration arbitration "unless negated expressly or by clear implication." 543 F.3d 460, 465 (8th Cir. 2008). Grant does not challenge conduct subsequent to termination of the Agreement. Though raising his claims only after termination of the Agreement, he alleges discrimination while the Agreement was in effect.

Additionally, Grant points to paragraph 12 of the Agreement, which prohibits him from taking certain actions after termination of the Agreement; specifically, it prohibits his solicitation of TMA's customers or use of TMA's proprietary or confidential information for a period of twelve months after termination of the Agreement. (Doc. 40-

6

3, p. 5). Grant argues specification of some post-termination obligations negates continuation of non-specified obligations after termination of the Agreement. (Doc. 47, p. 10). Grant cites no authority supporting that argument.

As TMA asserts, application of the rule Grant urges would result in no employment dispute being subject to arbitration after termination of the employment unless explicitly provided for in an employment agreement. As cases discussed below make clear, that is not the law.

## 2.    Scope of the Arbitration Clause

Because his rights under statutory anti-discrimination laws arise independently of the Agreement, Grant contends his claims do not "relate to" the Agreement or to the "obligations arising there under" and are therefore are not within the scope of the arbitration clause. He argues the Agreement focuses on constraints on his conduct, rather than on TMA's conduct, and the Agreement addresses TMA's rights to sue him for any violations but does not address any rights he may have to sue TMA. Id. at 14-15.

Grant cites Zetor North American, Inc., v. Rozeboom, where the court interpreted an arbitration clause with language somewhat similar to that of the Agreement. 861 F.3d 807 (8th Cir. 2017). The Zetor  arbitration clause applied to "any controversy arising out of or relating to" an agreement settling a trademark infringement claim. Id. at 808. Six years after the settlement, the same parties had another trademark infringement dispute. In upholding the district court's denial of a motion to compel arbitration based on the settlement agreement, the Eighth Circuit described the second dispute as similar to that which led to the settlement agreement but involving allegations that rested on independent trademark infringement grounds. Because the settlement agreement

related only to conduct occurring before its effective date, the court concluded the second dispute did not "touch matters covered by the arbitration provision" of the settlement agreement. Id. at 811. Though the language of the Zetor arbitration clause is similar to that of the Agreement, Zetor is readily distinguishable because its facts are not similar to those of this case.

In Gilmer v. Interstate/Johnson Lane Corp., the Supreme Court addressed the scope of an arbitration clause in a securities representative application. 500 U.S. 20 (1991). The plaintiff's employer required the plaintiff to be registered as a securities representative, and the registration application included an agreement to arbitrate "any dispute, claim or controversy" arising between the plaintiff and his employer. Id. at 23. The plaintiff later alleged his employment was terminated in violation of the Age Discrimination in Employment Act (ADEA), and the court concluded his ADEA claim was subject to the application's arbitration clause. The Supreme Court stated, "Although all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" Id. at 26 (citation omitted). The burden is on the plaintiff to show Congress intended to preclude a waiver of a judicial forum for his statutory discrimination claims. Id. (citing Shearson/Am. Express, Inc. v. McMahon, 428 U.S. 220, 227 (1987).

Subsequent to Gilmer, courts have routinely found other statutory employment discrimination claims subject to arbitration. See Webb v. Oaktree Med. Ctr., P.C., No. 3:18-cv-00924-JMC, 2018 WL 3153614 (D.S.C. June 28, 2018) (Title VII pregnancy discrimination claim subject to arbitration under agreement applying to "[a]ny

controversy, dispute, or disagreement arising out of or relating to" employment

agreement); <u>Giddings v. Media Lodge, Inc.</u>, 320 F. Supp. 3d 1064 (D.S.D. 2018)

(Uniformed Services Employment and Reemployment Rights Act claim arbitrable under

clause applying "[i]n the event any disagreement arises" under the employment

agreement); <u>Hull v. NCR Corp.</u>, 826 F. Supp. 303 (E.D. Mo. 1993) (Title VII claim

subject to arbitration under clause applying to "[a]ny controversy or claim arising out of

or relating to" employment contract).

The <u>Webb</u> decision does not address whether the plaintiff was still employed by

the defendant at the time of her Title VII claim. But <u>Gilmer</u>, <u>Hull</u>, and <u>Giddings</u> all

involved discrimination claims asserted after termination of employment and

presumably after termination of the respective employment agreements which included

arbitration clauses. Grant's assertion that he is not bound by the arbitration clause

because the Agreement has expired is inconsistent with those cases.

Grant has not shown Congress intended to preclude waiver of a judicial forum for

his statutory anti-discrimination claims. In this court's opinion, Grant's statutory claims

fall within the scope of the arbitration clause of the Agreement.

### 3.    Exclusion of Equitable Relief

There is no question Grant seeks equitable remedies—injunctive relief, backpay,

and front pay—as well as legal remedies. The Agreement's arbitration clause states, "[A]

party may have recourse to the courts for equitable relief." (Doc. 40-3, p. 8). Grant

argues that clause was intended to mean "efforts to obtain" equitable relief are excluded

from arbitration. Since the arbitration clause refers to rules of the AAA, and since AAA's

Employment Rules allow an arbitrator to issue temporary and permanent equitable

relief, Grant contends "there would be no reason to provide 'recourse to the courts for equitable relief' unless the parties intended to exclude suits for equitable relief from arbitration." (Doc. 47, p. 12).

TMA, on the other hand, argues the potential for equitable <u>remedies</u> does not make Grant's <u>claims</u> non-arbitrable. TMA argues the threshold question of whether discrimination occurred is to be decided by an arbitrator and, if an arbitrator decided in Grant's favor on the threshold question, his entitlement to equitable remedies could then be decided by the court. Alternatively, if Grant's requests for equitable remedies were viewed as equitable claims, TMA contends they should be stayed pending resolution of the claims for legal remedies. (Doc. 48, p. 11).

The Supreme Court has directed rigorous enforcement of arbitration agreements, "even if the result is 'piecemeal' litigation." <u>Dean Witter Reynolds, Inc., v. Byrd</u>, 470 U.S. 213, 221 (1985). And the Eighth Circuit has stated arbitrability is generally not dependent on the remedies requested. <u>Meierhenry Sargent LLP v. Williams</u>, 915 F.3d 507, 511 (8th Cir. 2019); <u>AgGrow Oils, LLC, v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 242 F.3d 777, 783 (8th Cir. 2001). TMA cites decisions of several district courts in which claims not subject to arbitration were stayed pending arbitration of related claims. <u>See, e.g.</u>, <u>Qualls v. EOG Res., Inc.</u>, Civil Action H-18-166, 2018 WL 2317718 (S.D. Tex. May 22, 2018); <u>Shepardson v. Adecco USA, Inc.</u>, No. 15-cv-05102-EMC, 2016 WL 1322994 (N.D. Cal. Apr. 5, 2016).

Grant has not cited any decisions interpreting similarly worded arbitration clauses to exclude any claim seeking equitable remedies from an arbitration agreement. In this court's opinion, the arbitration clause's reference to "recourse to the courts for

equitable relief" does not render Grant's individual claims nonarbitrable. Rather, this court interprets it to mean Grant will have recourse to seek equitable relief in this court if an arbitrator finds in his favor on his statutory discrimination claims.

In this court's opinion, Grant's individual discrimination claims are within the scope of the Agreement's arbitration clause, and those claims should be stayed while arbitration proceeds.

### 4.    Arbitration of Class-Wide Claims

TMA asserts the question of arbitrability of class-wide claims under the Agreement lies with the court. Eighth Circuit law supports that position, unless the parties to an arbitration agreement have "clearly and unmistakably" delegated the question to an arbitrator. Catamaran Corp. v. Towncrest Pharmacy, 864 F.3d 966 (8th Cir. 2017). In finding the parties had not delegated the question to the arbitrator, the court explained:

> Incorporation of AAA Rules by reference is insufficient evidence that the parties intended for an arbitrator to decide the substantive question of class arbitration. When dealing with class arbitration, we seek clear and unmistakable evidence of an agreement to arbitrate the particular question of class arbitration. The risks incurred by defendants in class arbitration (bet-the-company stakes without effective judicial review, loss of confidentiality) and the difficulties presented by class arbitration (due process rights of absent class members, loss of speed and efficiency, increase in costs) all demand a more particular delegation of the issue than we may otherwise deem sufficient in bilateral disputes.

Id. at 973 (citations omitted). Grant asserts a recent Supreme Court case abrogated Catamaran.[2] But Grant does not contend the question of class-wide arbitration has been

---

[2] After Lamps Plus was decided, TMA asserted it controlled disposition of the motion to compel arbitration, (Doc. 50), and Grant maintained his position that the Agreement unambiguously permitted class arbitration, (Doc. 51, p. 4). In a

delegated to the arbitrator under the Agreement. (Doc. 47, p. 8 n.1).

Grant contends the Agreement contemplates class-wide arbitration because it provides for application of rules of the AAA, and AAA's rules permit a party to pursue class-wide claims in arbitration. (Doc. 47, p. 15). As exhibits to his responsive brief, Grant submitted two sets of AAA's rules—Employment Arbitration Rules and Mediation Procedures, (Doc. 47-1), and Supplementary Rules for Class Arbitrations, (Doc. 47-2). Grant describes the Supplementary Rules as providing a "sophisticated mechanism for when and how to administer a class arbitration, which are fully incorporated into the parties' agreement." (Doc. 47, p. 16). Grant argues (1) TMA agreed to application of the AAA rules by virtue of the Agreement's reference to those rules, (2) the Supplemental Rules were in effect prior to the Agreement's effective date and TMA thus should have been aware of them, and (3) TMA could have exempted application of the Supplementary Rules when drafting the Agreement had it desired to exempt class-wide claims from arbitration.

The Agreement does not specify which of AAA's sets of rules apply. The Employment Arbitration Rules state, "The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided . . . for

─────────────────────

supplemental brief filed immediately after the <u>Lamps Plus</u> decision, TMA referenced a dissenting <u>Lamps Plus</u> opinion which suggested an arbitration agreement's incorporation of AAA's rules was sufficient reason to find the agreement ambiguous on the question of class-wide arbitrability. (Doc. 50, p. 3). Grant responded, contending TMA had erroneously asserted <u>Lamps Plus</u> "somehow ruled that an agreement incorporating the AAA Rule is ambiguous as to the availability of class arbitration." (Doc. 51, p. 3). This court does not interpret <u>Lamps Plus</u> to have determined how incorporation of AAA's rules should be viewed and does not interpret TMA's brief to have asserted otherwise.

arbitration by the AAA of an employment dispute without specifying particular rules."

(Doc. 47-1, p. 11). The parties do not dispute application of the AAA Employment Rules.

As to AAA's Supplementary Rules, the court notes those rules include the following

language:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

(Doc. 47-2, pp. 4-5). At first glance, this rule might appear contrary to the principle that

arbitrability of class-wide claims is decided by the court rather than by the arbitrator.

But the rule's procedure for the parties to bring a judicial challenge to an arbitrator's

decision on arbitrability alleviates that concern. The AAA rule continues:

> In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.

Id. at 5. Since an arbitrator is not to construe existence of the Supplementary Rules as

favoring or disfavoring arbitration on a class basis, and since the Agreement provides

for application of AAA's rules, the court should follow the same interpretation. Thus, in

this court's opinion, existence of the Supplementary Rules governing class arbitration is not to be considered in determining whether the parties agreed to class arbitration.

## 5.    <u>Lamps Plus, Inc., v. Varela</u>

TMA asserts the Supreme Court's recent decision in <u>Lamps Plus</u> controls the question of availability of class-wide arbitration. Varela, a Lamps Plus employee, filed a putative class action, alleging state and federal claims on behalf of employees whose tax information had been compromised when a hacker improperly obtained employees' personal information from Lamps Plus. Varela's employment agreement included an arbitration clause which did not specifically address class-wide arbitration.[3] The district court authorized class-wide arbitration. The Ninth Circuit affirmed, reasoning the arbitration agreement was ambiguous on the question of class-wide arbitration and construing the ambiguity against the employer as drafter of the agreement under the state law doctrine of *contra proferentem*.

The Supreme Court reversed the decision of the Ninth Circuit, holding, "Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis. The doctrine of *contra proferentem* cannot substitute for the requisite affirmative 'contractual basis for concluding the part[ies] *agreed* to [class arbitration].'" <u>Id.</u> at 1419 (quoting <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, 559 U.S. 662, 684 (2010)). The majority described its decision as "far from [a] watershed," but instead as consistent with "a long line of cases holding that the FAA provides the default rule for

---

[3] The Lamps Plus arbitration provision stated "any and all disputes, claims or controversies arising out of or relating to[] the employment relationship between the parties[] shall be resolved by final and binding arbitration." <u>Lamps Plus</u>, 139 S. Ct. at 1427 (Sotomayor, J., dissenting).

resolving certain ambiguities in arbitration agreements" and consistent with repeated holdings that ambiguity about the scope of an arbitration agreement must be resolved in favor of arbitration. <u>Id.</u> at 1418.

Subsequent to <u>Lamps Plus</u>, a number of district courts have interpreted it in the manner TMA suggests. Within this circuit, a recent decision rejected the argument that <u>Lamps Plus</u> precluded assignment of an agreement to arbitrate:

> In <u>Lamps Plus</u>, the Supreme Court held that the FAA bars a court order compelling class arbitration if the arbitration agreement is ambiguous about the availability of class arbitration. Emphasizing the difference between class wide arbitration and individual arbitration the Court concluded that the statute requires more than ambiguity to ensure that the parties "actually agreed to arbitrate on a classwide basis." <u>Lamps Plus, Inc. v. Varela</u>, 139 S. Ct. 1407, 1415 (2019) ("Class arbitration is not only markedly different from the 'traditional individualized arbitration' contemplated by the FAA, it also undermines the most important benefits of that familiar form of arbitration. (citations omitted). The statute therefore requires more than ambiguity to ensure that the parties actually agreed to arbitrate on a classwide basis."

<u>Campbell v. Jacob</u>, Nos. 4:19-cv-179-JM, 5:19-cv-105, 4:19-cv-208, and 4:19-cv-267, 2019 WL 4284106, at *2 (E.D. Ark. Sept. 10, 2019).[4]

<u>Morgan</u>, a putative class action under the Fair Labor Standards Act (FLSA), addressed whether the employer had waived its right to compel arbitration by engaging in litigation activities and delaying its assertion of a right to compel arbitration. 2019 WL 5089205. The employer argued the recent <u>Lamps Plus</u> decision should be considered justification for its delay. The district court rejected that argument:

---

[4] <u>See also</u> <u>Campbell v. Jacob</u>, Nos. 4:19-cv-179-JM, 5:19-cv-105, 4:19-cv-208, and 4:19-cv-267, 2019 WL 42674876, at *2 (E.D. Ark. Sept. 9, 2019) (consolidated case); <u>Campbell v. Jacob</u>, Nos. 4:19-cv-179-JM, 5:19-cv-105, 4:19-cv-208, and 4:19-cv-267, 2019 WL 4020690, at *2 (E.D. Ark. Aug. 26, 2019) (consolidated case).

In <u>Lamps Plus</u>, the court explained, "In <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, we held that a court may not compel arbitration on a classwide basis when an agreement is 'silent' on the availability of such arbitration." The Court then held that an "ambiguous" arbitration agreement cannot provide the necessary "contractual basis" for compelling class arbitration, adding that this was a "a conclusion that follows directly from our decision in <u>Stolt-Nielsen</u>." In this case, the arbitration agreement between Sundance and Morgan is not simply "ambiguous," but "silent" on the availability of arbitration of class claims. Certainly, Sundance has not shown, and the court has not found, anything in the arbitration agreement creating such an ambiguity. Thus, the ability to arbitrate individual claims, but not class claims, was apparent at the time Morgan filed this action in light of the decision in <u>Stolt-Nielsen</u>.

<u>Id.</u> at *7 (citations omitted). The court denied the motion to compel arbitration, finding the employer had waived its right to compel arbitration by engaging in litigation activities prior to asserting a right to compel arbitration.[5]

In <u>Reynosa-Juarez v. Accountable Healthcare Staffing, Inc.</u>, the plaintiff contended she was entitled to bring class-wide claims under the FLSA despite the holding in <u>Lamps Plus</u>, arguing the arbitration clause between the parties "prohibits any limitation on her 29 U.S.C. § 216(b) statutory right to bring a collective action because the [American Health Lawyers Association (AHLA)] Arbitration Rules that govern the agreement provide 'the arbitrator must disregard any contract provision that purports to limit the employee's statutory rights or remedies.'" No. 5:18-cv-06302-EJD, 2019 WL 5814653, at *7 (N.D. Cal. Nov. 7, 2019). The court rejected the plaintiff's argument for two reasons:

---

[5] Grant does not contend TMA waived its right to compel arbitration by engaging in litigation prior to filing this motion. This court notes the extent of TMA's litigation activity was significantly more limited than that described in <u>Morgan</u> and was likely insufficient to be considered a waiver of its right to compel arbitration.

First, this contradicts <u>Lamps Plus</u> reasoning that a court may not "infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis." 139 S. Ct. at 1419. Thus, any ambiguity resulting from the AHLA Arbitration Rules "cannot substitute for the requisite affirmative contractual basis for concluding that the part[ies] agreed to [class arbitration]." <u>Id.</u> (quotation marks and citation omitted) (alteration in original). Second, a court in this District recently considered this argument and concluded class arbitration was not available because "[a] class action is a procedural device, not a claim for relief." <u>Hernandez v. San Gabriel Temp. Staffing Servs., LLC</u>, 2018 WL 1582914, at *7 (N.D. Cal. Apr. 2, 2018); <u>see also</u> <u>Epic Sys. Corp. v. Lewis</u>, 138 S. Ct. 1612, 1618 (2018) ("In another contextual clue, the employees' underlying causes of action arise . . . under the Fair Labor Standards Act, which permits the sort of collective action the employees wish to pursue here. Yet they do not suggest that the FLSA displaces the Arbitration Act, presumably because the Court has held that an identical collective action scheme does not prohibit individualized arbitration proceedings." (citation omitted)).

<u>Id.</u>

In another post-<u>Lamps Plus</u> case, <u>Yu v. Volt Information Sciences, Inc.</u>, the plaintiff argued "the AAA employment rules, which the parties' arbitration provision incorporates, anticipate and permit collective-action arbitration." No. 19-cv-01981-LB, 2019 WL 3503111, at *7 (N.D. Cal. Aug. 1, 2019). The court noted the plaintiff did not support his argument with any citation to AAA rules but assumed he referred to AAA's Supplementary Rules for class-wide arbitration. The court stated:

The supplementary rules expressly state, however, that "[i]n construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." Courts have rejected the proposition that the existence of these supplementary rules evinces an agreement to submit to class arbitration. <u>Reed Elsevier, Inc. v. Crockett</u>, 734 F.3d 594, 599-600 (6th Cir. 2013) (noting that "the [AAA']s Supplemental Rules expressly state that one should 'not consider the existence of these Supplementary Rules, or any other AAA rules[']" in rejecting argument that parties agreed to class arbitration); <u>accord, e.g.</u>, <u>Cobarruviaz v. Maplebear, Inc.</u>, 143 F. Supp. 3d 930, 945-46 (N.D. Cal. 2015) (generally same) (citing cases).

Id. (footnote omitted).

In this court's opinion, under <u>Stolt-Nielsen</u> and <u>Lamps Plus</u>, the Agreement excludes class-wide arbitration. The Agreement is silent on the availability of arbitration of class-wide claims, and reference to the AAA rules does not constitute an affirmative contractual basis for concluding the parties agreed to class-wide arbitration.

### 6. Prospective Waiver of Federal Rights

Finally, Grant contends interpreting the Agreement to exclude class-wide arbitration would result in an impermissible prospective waiver of federal rights to assert pattern-or-practice discrimination claims under Title VII and § 1981. He asserts a "prospective waiver of pattern-or-practice rights" would violate two recognized doctrines—substantive waiver and effective vindication—that invalidate arbitration agreements that result in waivers of federal rights. (Doc. 47, p. 18).

The Supreme Court addressed the substantive waiver doctrine in <u>14 Penn Plaza LLC v. Pyett</u>, rejecting earlier case law that suggested a decision to arbitrate statutory discrimination claims was tantamount to a substantive waiver of federal anti-discrimination rights:

> The Court [of Appeals] was correct in concluding that federal antidiscrimination rights may not be prospectively waived, but it confused an agreement to arbitrate those statutory claims with a prospective waiver of the substantive right. The decision to resolve ADEA claims by way of arbitration instead of litigation does not waive the statutory right to be free from workplace age discrimination; it waives only the right to seek relief from a court in the first instance. This "Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law."

556 U.S. 247, 265-66 (2009) (citations omitted).

18

As to the effective vindication doctrine, the Supreme Court has explained:

> The "effective vindication" exception to which respondents allude originated as dictum in <u>Mitsubishi Motors [Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614], where we expressed a willingness to invalidate, on "public policy" grounds, arbitration agreements that "operat[e] . . . as a prospective waiver of a party's *right to pursue* statutory remedies." Dismissing concerns that the arbitral forum was inadequate, we said that "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." Subsequent cases have similarly asserted the existence of an "effective vindication" exception, but have similarly declined to apply it to invalidate the arbitration agreement at issue.

> And we do so again here. As we have described, the exception finds its origin in the desire to prevent "prospective waiver of a party's *right to pursue* statutory remedies." That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. And it would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable. But the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy. The class-action waiver merely limits arbitration to the two contracting parties. It no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938. Or, to put it differently, the individual suit that was considered adequate to assure "effective vindication" of a federal right before adoption of class-action procedures did not suddenly become "ineffective vindication" upon their adoption.

<u>Am. Express Co. v. Italian Colors Rest.</u>, 570 U.S. 228, 235-37 (2013) (footnotes and citations omitted).

Grant argues, in essence, that a pattern-or-practice employment discrimination claim is a cause of action distinct from other discrimination claims. But, in actuality, a pattern-or-practice claim is distinguished from other discrimination claims only in that it involves evidence of a pattern or practice of discrimination. As the Second Circuit discussed:

> [Plaintiff] contends, and the district court agreed, that individual arbitration would preclude her from vindicating her right to bring a substantive "pattern-or-practice" claim under Title VII. But such a right does not exist. In <u>Chin v. Port Authority of New York</u>, 685 F.3d 135 (2d Cir. 2012), we concluded that in Title VII jurisprudence "pattern-or-practice" simply refers to a method of proof and does not constitute a "freestanding cause of action." 685 F.3d at 148, n.8. In so doing, we joined the Fifth Circuit which reached the same conclusion. <u>See</u> <u>Celestine v. Petroleos de Venezuella SA</u>, 266 F.3d 343, 355 (5th Cir. 2001) ("A pattern or practice case is not a separate and free-standing cause of action . . . but is really merely another method by which disparate treatment can be shown"). Our conclusion was based on the Supreme Court's observation in <u>Int'l Bhd. of Teamsters v. United States</u>, 431 U.S. 324, 343, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977), that references to "pattern-or-practice" in the statute do not confer a particular right *per se*—rather they enable the government to enforce Title VII on behalf of groups of employees by alleging a "regular procedure or policy" of unlawful employment discrimination under § 2000e-2. 431 U.S. at 360, 97 S. Ct. 1843. Moreover, we also recognized that the pattern-or-practice method of proof had, in the past, been viewed as "no more than an application of the <u>McDonnell Douglas</u> "burden-shifting framework" to claims brought either by the government on behalf of a group of employees or by class plaintiffs. [<u>Chin</u>,] 685 F.3d at 147-148.

<u>Parisi v. Goldman, Sachs & Co.</u>, 710 F.3d 483, 487-88 (2d Cir. 2013). As the Second Circuit noted, the Fifth Circuit reached the same conclusion in <u>Celestine</u>, and other circuits have also done so. <u>See</u> <u>Semsroth v. City of Witchita</u>, 304 F. App'x 707, 716-17 (10th Cir. 2008) (citing cases from the Fourth, Sixth and Seventh Circuits); <u>see also</u> <u>EEOC v. JBS USA, LLC</u>, No. 8:10CV000318, 2012 WL 12898225, at *4 (D. Neb. Sept. 28, 2012) (noting the majority of courts have found that individual plaintiffs cannot bring a pattern-or-practice claim).

Grant's contention that interpreting the Agreement to exclude class-wide arbitration would violate the doctrines of substantive waiver and effective vindication is not supported by the case law. Since a distinct pattern-or-practice claim is not cognizable, excluding class-wide arbitration would not result in waiver of a substantive right.

As discussed above, the question of class-wide arbitration is to be decided by the court. This court recommends the district judge conclude the Agreement excludes class-wide arbitration and further recommends TMA's motion to dismiss the putative class-wide claims be granted.

**7.    Grant's Motion to Amend the Complaint**

Grant seeks leave to amend his complaint to add a second plaintiff, to add factual allegations as to the proposed second plaintiff, and to join the second plaintiff in the three claims alleged in Grant's complaint. (Doc. 52). TMA opposes the motion. (Doc. 53). In the event TMA's motion to compel arbitration is granted, however, Grant states "denying leave to add [the second plaintiff's] claims would be appropriate so he can refile elsewhere." (Doc. 54, p. 4).

If the district judge grants the motion to compel arbitration and stays the case while Grant's individual arbitration proceeds, the district judge should deny leave to amend the complaint per the statement in Grant's reply brief. If the district judge denies the motion to compel arbitration, this court will then address Grant's motion to amend the complaint.

**Conclusion**

Standards of Rule 56 apply to TMA's motion to compel arbitration. There are no genuine issues of fact material to the questions of arbitrability of either the individual or class-wide discrimination claims. TMA is therefore entitled to judgment as a matter of law compelling arbitration of Grant's individual claims, and the case should be stayed to allow individual arbitration to proceed. TMA is also entitled to judgment as a matter of law dismissing claims for class-wide arbitration. If the district judge adopts this

21

recommendation, the district judge should deny Grant's motion to amend the complaint.

Dated this 5th day of December, 2019.

*/s/ Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge

## NOTICE OF RIGHT TO OBJECT[6]

Pursuant to Local Civil Rule 72.1(D)(3), any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **December 19, 2019**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Any responses to objections are due by **December 30, 2019**. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.

---

[6] See Fed. R. Civ. P. 72(b); D.N.D. Civ. L.R. 72.1.